UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-8411-WM

UNITED STATES OF AMERICA

v.

MARIO CLIFFORD RIVERA,

        Defendant.    /

FILED BY SW D.C.
Sep 4, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No.

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: _/s/ Rinku Tribuiani_
Rinku Tribuiani
Assistant United States Attorney
Fla. Bar No. 0150990
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>MARIO CLIFFORD RIVERA<br><br>*Defendant(s)* | ) ) ) ) ) )  Case No. 24-8411-WM |

FILED BY ___SW___ D.C.
Sep 4, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **\*\*See below** in the county of **Palm Beach** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Conspiracy to Possess with the Intent to Distribute 400 grams or more of Fentanyl (December 27, 2022 - October 29, 2023) |
| 21 U.S.C. 841(a)(1) | Possession with the Intent to Distribute 40 grams or more of Fentanyl (March 16, 2023) |
| 21 U.S.C. 841(a)(1) and 18 U.S.C. 2 | Possession with the Intent to Distribute 400 grams or more of Fentanyl (October 3, 2023) |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Shelton Hammonds, Special Agent, FBI
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: September 4, 2024

_____
*Judge's signature*

City and state:   West Palm Beach, Florida     William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR AN ARREST WARRANT

I, Shelton Hammonds, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and I have been so employed since May 2009. I attended the FBI Academy in Quantico, Virginia for five (5) months where I received training in federal criminal law and investigative techniques, including laws related to controlled substances. I am currently assigned to the Safe Streets Task Force Squad of the West Palm Beach Resident Agency. I have primarily investigated gangs, drug trafficking, violent crimes, organized criminal enterprises, and bank robberies. I have been instructed in investigative techniques concerning drug trafficking offenses amongst other federal violations. Prior to joining the FBI, I was employed as a U.S. Probation Officer working in the Presentence Investigation Unit.  I have investigated numerous individuals for various violations of federal law. As a  FBI Special Agent, your affiant has conducted investigations of, and has been instructed in investigative techniques concerning, the unlawful distribution of illegal narcotics, with the intent to distribute controlled substances, importation of illegal narcotics, use of communications facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing, or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Codes, Sections 841, 843, 856, 846, 852, and 963 respectively.

2. This affidavit is made in support of a criminal complaint charging **MARIO CLIFFORD RIVERA** with conspiracy to possess with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), possession with the intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and possession

with the intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

3. This application stems from a criminal investigation into Mario Clifford RIVERA's distribution of narcotics. I learned that RIVERA distributed narcotics while utilizing the Postal Service to obtain some of his supply of narcotics.

4. On December 27, 2022, FBI Undercover Employee (UCE) 11632 recorded a phone call with Mario RIVERA at phone number (561) 929-XXXX to coordinate the purchase of narcotics from RIVERA. RIVERA told the UCE he would be able to provide a price once he received a new shipment of narcotics.

5. On January 3, 2023, UCE 11632 had the following conversation via text message with RIVERA through phone number (561) 929-XXXX:

UCE- "What's good, this D…we still gone link?"

RIVERA- "I gotcha bro, just right now been dealing with problems on shipments. Should be sometime this week, just cold fucked up a lot in movement. But I did not forget about you"

UCE- "Ok bet"

6. On or about February 27, 2023, RIVERA advised a PBSO confidential informant, who was assisting PBSO, that he (RIVERA) was expecting to receive two kilograms of fentanyl in the mail. RIVERA, who was in the Southern District of Florida, sent the CI a screenshot of the USPS tracking details. The screenshot did not include the tracking number; however, it showed

time stamps of the parcel's arrival at the USPS El Segundo, California facility and USPS possession of the parcel. The time stamps indicated that the parcel had been mailed on February 27, 2023. These time stamps matched the time stamps associated with Express Mail parcel, tracking number EI561039834US.

6. United States Postal Inspection Service (USPIS) Task Force Officer (TFO) Henry Ramos attempted to locate the suspected drug parcel. The parcel was mailed from Los Angeles and was destined for Jacksonville, Florida. The individual who mailed the parcel was captured on video and was identified as J.H., an unindicted co-conspirator who lived in Jacksonville. TFO Ramos had the parcel interdicted in Los Angeles, California and forwarded to the USPIS Jacksonville office for follow-up investigation.

7. On March 8, 2023, a search warrant for the parcel bearing tracking number EI561039834US was obtained from the United States District Court for the Middle District of Florida. The search of the parcel was executed and yielded 2.08 kilograms of a substance which field tested positive for fentanyl. Each kilo of fentanyl was wrapped with the Tennessee Titans logo.




The fentanyl was tested by the DEA laboratory and found to have a net weight of 1981 grams.

8. On March 16, 2023, CI 2638 met with RIVERA at RIVERA's residence in Delray Beach, Florida. During this meeting, RIVERA retrieved a kilogram of fentanyl from RIVERA's bedroom that was wrapped with the same Tennessee Titans logo and showed it to the CI. RIVERA wanted to sell the kilogram to the CI for $35,000 and requested the CI take all the product. The CI declined to take the entire amount of fentanyl but opted to take a smaller portion. The meeting was recorded, and the Tennessee Titans logo was observed in the recording. The CI obtained 86.3 grams of the suspected fentanyl from RIVERA which was placed into PBSO evidence. The 86.3 grams were "fronted" to the CI by RIVERA with the understanding the payment was to occur later.

9. On March 21, 2023, CI 2638 met with RIVERA to pay for the 86.3 grams the CI previously obtained from RIVERA. During the meeting, RIVERA told the CI the "windows" were coming. According to the CI, RIVERA referred to crystal methamphetamine as "windows." During this meeting, co-conspirator Josue Pineda-Robles arrived at the location. RIVERA introduced Pineda-Robles to the CI and identified Pineda-Robles as the person who was "coordinating" for him (RIVERA) directly coming from the "hommies." RIVERA told the CI that Pineda-Robles had been good to him. Pineda-Robles told the CI that Pineda-Robles should be coming through with at least "three windows". Based on training and experience, agents believe RIVERA informed the CI that Pineda-Robles coordinated drug distribution for RIVERA, and the drugs came from the sources of supply. Agents also believe that Pineda-Robles stated that he (Pineda-Robles) would be receiving three pounds of crystal methamphetamine. RIVERA told Pineda-Robles to exchange phone numbers with the CI. The CI provided Pineda-Robles with his cellular number and Pineda-Robles provided the CI with phone number (941) 273-XXXX. The meeting was audio/video recorded. Agents reviewed the recording and confirmed the CI's account of events.

10. On March 31, 2023, RIVERA was booked into the Palm Beach County jail for a state case. On April 19, 2023, RIVERA was transferred to the Florida Department of Corrections and admitted to the South Florida Reception Center prison.

11. Law enforcement obtained recorded calls that RIVERA made through the prison system. They learned that RIVERA utilized a contraband cell phone to communicate with other members of his drug trafficking organization. During these calls, RIVERA inquired about the prices that his coconspirators charged for narcotics, and RIVERA directed a portion of the payments to his own accounts.

12. On May 4, 2023, RIVERA called unindicated coconspirator J.R. from the prison phone. J.R. told RIVERA that Pineda-Robles got rid of "all that". RIVERA asked, "at what ticket?" J.R. said that he (J.R.) did not know. J.R. asked RIVERA what he (RIVERA) wanted Pineda-Robles to do with the "bread." RIVERA responded that Pineda-Robles should send it to RIVERA. RIVERA added that Pineda-Robles should have charged "15 a zip". At bare minimum, RIVERA wanted "13 a zip". RIVERA calculated that Pineda-Robles had 6, so there should have been $7800. RIVERA instructed J.R. to "grab 5 bands of that and to give his (RIVERA's) mother 2,800." RIVERA said that he (RIVERA) might have J.R. meet up with RIVERA's mother and start "launching that shit." RIVERA instructed J.R. not to forget to tell Pineda-Robles about the "78" and that that did not include the money that Pineda-Robles owed RIVERA. Based on my training and experience, I believe that during this prison phone conversation, J.R. informed RIVERA that Pineda-Robles said he (Pineda-Robles) sold the drugs. RIVERA asked how much money Pineda-Robles got for the drugs. J.R. replied that he did not know. RIVERA instructed J.R. that Pineda-Robles should send the money to him (J.R.). RIVERA opined that the price should be 15, referring to $1500 per ounce of fentanyl. RIVERA told J.R. to remind Pineda-Robles that he (Pineda-Robles)

owed RIVERA $7800 for the six ounces and that did not include the money that Pineda-Robles previously owed RIVERA.

13. On May 6, 2023, RIVERA called Pineda-Robles via prison phone and asked if Pineda-Robles "got that"? RIVERA said that he (RIVERA) was not ready for Pineda-Robles to "throw the material like that". RIVERA asked Pineda-Robles what Pineda-Robles "threw it at"? Pineda-Robles responded that he (Pineda-Robles) got "6". RIVERA told Pineda-Robles that Pineda-Robles could not do that. RIVERA added, "I had all of them going at 15". RIVERA added at the bare minimum, RIVERA needed them at "13". RIVERA explained that he wanted Pineda-Robles to sell them at "15" and keep "2" for himself. Pineda-Robles replied that he (Pineda-Robles) got "14.5" because "the market was crazy right now". Pineda-Robles asked RIVERA where to send the money. RIVERA instructed Pineda-Robles to drop "5" into his account. Based on my training and experience, I believe that during this call, RIVERA asked Pineda-Robles if he (Pineda-Robles) had the money. Rivera wanted to know how much Pineda-Robles received for the drugs. Pineda-Robles responded $6000. RIVERA told Pineda-Robles that he (RIVERA) had each ounce priced at $1500. Pineda-Robles answered that he (Pineda-Robles) got $1450 per ounce. RIVERA instructed Pineda-Robles to deposit $5000 into RIVERA's prison account.

14. During the month of September 2023, the CI began discussions with RIVERA to purchase a kilogram of fentanyl. Utilizing a contraband cellular phone with the number of (786) 874-XXXX, RIVERA informed the CI that he (RIVERA) could provide a kilogram of fentanyl for $21,000. RIVERA required $5000 to be mailed and received prior to delivery. RIVERA instructed the CI to mail the money to "Jessica Aguilar, 850 Beyer Way L#10, San Diego, California, 92154." All the text message communications between RIVERA and the CI were preserved and placed in evidence.

15. On September 7, 2023, agents from the USPIS packaged $5000 in FBI funds in a magazine. The parcel was then shipped in a priority mail envelope via the USPS bearing tracking number EI 267 841 970 US. Utilizing the USPS database, agents learned the package was delivered on September 8, 2023.

16. Several weeks passed after the funds were delivered to the address provided by RIVERA. During that time, the CI received multiple text messages and screen shots in reference to the movement and whereabouts of the kilogram of fentanyl. On September 13, 2023, RIVERA texted via phone number (786) 874-XXXX (hereinafter "contraband phone"), stating the "caca" was jumping the fence and that he was just waiting on touch down. RIVERA texted that it would be mailed to the CI overnight and that there was no tracking number right now because it was getting jumped to "Califas" and then pushed to another state before being pushed out. RIVERA added that the CI was the only one RIVERA had to call because everyone else with whom RIVERA communicated used Telegram. Based on my training and experience, RIVERA stated that "caca," which referred to fentanyl, was crossing the Mexican border into California and might be transported to another state before being mailed to the final destination. RIVERA also stated that RIVERA used the Telegram application to communicate with everyone other than the CI. The Telegram application is an encrypted messaging and voice over IP application used through a communication device such as a computer or cellular phone.

17. On October 2, 2023, the CI received the tracking number 1Z 2L6 9TB 13 2001 2615 from RIVERA indicating the kilogram of fentanyl was in route to an address previously provided by the CI. On October 3, 2023, agents retrieved the parcel. The parcel contained a return address of "Justin Durham, Camino Del Rio N., San Diego, CA, 92810." The telephone number listed on the parcel was (858) 800-XXXX. Agents unboxed the contents of the parcel which revealed a

wrapped white powder rectangular brick weighing approximately 1,081.4 grams. Using a TruNarc Test machine, agents received a positive test result for fentanyl. The fentanyl was laboratory tested and found to have a net weight of 993.4 grams.

18. On October 16, 2023, RIVERA contacted the CI via text messaging asking the CI if the CI could make payment for the kilogram of fentanyl using Zelle. RIVERA provided the CI with two cellular phone numbers to send the payments. Those cellular phone numbers were (919) 625-XXXX and (919) 356-XXXX. It should be noted that RIVERA's mother is listed as the subscriber for cellular phone number (919) 625-XXXX. RIVERA is listed as the subscriber for cellular phone number (919) 356-XXXX.

19. Between October 17, 2023, and October 20, 2023, agents made multiple transfers of funds totaling $8,000 through Zelle utilizing the cellular phone number (919) 625-XXXX.

20. On October 17, 2023, agents made a transfer of funds for $2,000 via Zelle. The transaction provided a receipt stating the funds were transferred to "Mario Rivera" with confirmation number of RPORN2SN3.

21. On October 18, 2023, agents made two separate transfers of funds for $1,000 each via Zelle. The first transaction provided a receipt stating funds were transferred to "Denise" with confirmation number of RPORN556VF. The second transaction provided a receipt stating funds were transferred to "Mario Rivera" with confirmation number of RPORN55K7K.

22. On October 19, 2023, agents made two separate transfers of funds of $1,000 via Zelle. The first transaction provided a receipt stating the funds were transferred to "Mario Rivera" with confirmation number RPORNN6Y3JJ. The second transfer of funds provided a receipt stating funds were transferred to "Denise" with confirmation number RPORN7KMD9.

23. On October 20, 2023, agents made a transfer of funds via Zelle for $2,000. The transaction provided a receipt stating funds were transferred to "Mario Rivera" with confirmation number RPORN9QK69.

24. On October 29, 2023, a PBSO UC and a CI met with Denise S. (hereinafter "D.S."), RIVERA's girlfriend, to make a final $5,000 payment for a kilogram of fentanyl initially fronted by RIVERA. D.S. communicated with the UC and CI via text message and advised them to meet her at Publix located at 820 Southern Boulevard, West Palm Beach, Florida. Shortly after receiving the text message, D.S. arrived at Publix driving a silver Mitsubishi bearing a Florida license plate and parked near the front of the store. The UC and CI pulled up next to her vehicle. The CI exited the UC's vehicle and entered the front driver side seat of D.S.'s vehicle. Upon making contact with D.S, the CI gave her $5,000. After a brief conversation, the CI exited D.S.'s vehicle and returned to the UC's vehicle. D.S. drove away and was followed by surveillance units to a nearby residence located at 1025 Green Street, West Palm Beach. Agents observed D.S. exiting her vehicle at the residence and surveillance was discontinued.

25. Based on the facts outlined above, your affiant believes there is a probable cause to charge Mario Clifford RIVERA with conspiracy to possess with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), possession with the intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and

possession with the intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
SHELTON HAMMONDS
Special Agent, FBI

Sworn to me via Telephone-FaceTime by the affiant in accordance with the requirements of Fed. R. Crim. P 4.1 on this 4th day of September 2024.

_____
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Mario Clifford Rivera

**Case No**:

Count #: 1

Conspiracy to Possess with the Intent to Distribute 400 grams or more of Fentanyl

Title 21, United States Code, Section 841(a)(1) and 846
* **Max. Term of Imprisonment: Life imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): 10 years**
* **Max. Supervised Release: 5 years - life**
* **Max. Fine:  $10 million dollars**

Count #: 2

Possession with the Intent to Distribute 40 grams or more of Fentanyl

Title 21, United States Code, Section 841(a)(1)
* **Max. Term of Imprisonment: 40 years**
* **Mandatory Min. Term of Imprisonment (if applicable): 5 years**
* **Max. Supervised Release: 4 years - life**
* **Max. Fine: $5 million dollars**

Count #: 3

Possession with the Intent to Distribute 400 grams or more of Fentanyl

Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2
* **Max. Term of Imprisonment: Life imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): 10 years**
* **Max. Supervised Release: 5 years - life**
* **Max. Fine: $10 million dollars**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**